We have three cases today. First is United States v. Hall, and we'll hear from Mr. Terraza. Thank you, Your Honor. You may please the court. We're here today on an appeal from a sentence outside of the recommended sentencing guidelines, in fact, a maximum sentence for the receipt of child pornography. This is, I think, a little bit unusual because there's not a dispute about the offense conduct in this case. The dispute goes to a prior conviction of Mr. Hall and the evidence about that conviction that the court considered in imposing and fashioning its sentence. The guidelines calculation in Mr. Hall's case began at 121 to 151 months. It became 180 months because of the minimum mandatory for his prior conviction of a sex offense involving children. Now, of course, I understand that there's no sex offense involving children. That is not shocking to the court and disturbing, but there was a disconnect in this case between what is required under the statute Mr. Hall was convicted of and the findings the court made about what he actually did in his prior case. The court had before it the entire file from that previous case, did it not? I can't say that it's the entire file, Judge. Referred to as the file and nowhere does anybody say, hey, something's missing from it. I wouldn't know, Judge. That case came about in 2002. He was sentenced in 2018. The conduct underlying that charge was from either 1992 or 93. But if you don't know and you're the appellant, it doesn't bode well for you. There's no indication that there was an error made because something wasn't contained in that file. Well, the reliability of what was in that file is... That's the issue. So wasn't it true that the video that had been admitted into evidence in the state court had been destroyed, but everything else was attested by the case agent that it was a complete file? I know that the government was never able to produce the video and the rationale behind that was that it had been destroyed. The court did make a finding that what was alleged to have occurred in that video actually occurred. As Mr. Hall's attorney never got to see the video, never could verify that or not from what was there. But others test... Others. But there was testimony about or statements about what was in the video, whether or not... There were statements in the case file from the 2002 case about what was contained in the video. And that included the digital penetration of some young children. Mr. Hall denied that conduct. There were some controlled phone calls made with Mr. Hall that were also admitted over a hearsay objection. And I need to point out to the court that in the brief, you know, I describe it as Mr. Hall denying touching the children. It's not that clear when you look at the transcripts of the phone call. I think the question was asked many, many different ways during the phone call. Mr. Hall admitted to some certainly inappropriate and criminal conduct during the phone call. He did deny ever penetrating the children or having oral sex with the children. He was clear on those points. And that is something that the court did find that he committed and used explicitly as a basis for the sentence. But didn't he, during the sentencing in this case, not the 2002 one, didn't he say that he didn't remember? He said that... Whether he did these things. I mean, he didn't deny that he did these things in this sentencing, in this case. He said he didn't remember. Isn't that right? I believe that's correct, Judge. And he also said that many times during the controlled calls back in 2002, that he didn't remember exactly what happened. He had tried to block that out. There was a tattoo on his arm that I guess matched the description of the tattoo on the arm of the person in the video, even though we don't have the video. Is that right? That's what was alleged, Judge. I could never verify that. Well, hearsay evidence is usable under the guidelines for sentencing if it's determined to be sufficiently reliable. Judge Rogers, I don't think, really relied on the rule of evidence 807, which is a residual clause. But doesn't that cover this kind of circumstance? Well, the court is also... A lot of this was actually subject to cross-examination. The depositions certainly were. Any other testimony apparently was. I think it's important to note that in state criminal depositions, there's a different motive than there is at trial. Those are discovery depositions. They're not admissible in the state court at trial. And the rationale is that there's a different motive. So I don't think it's exactly the same kind of cross-examination there would be in the sentencing hearing. The court has a three-part test. Are they not admissible for impeachment purposes? They would be admissible for impeachment, Judge. So why wouldn't there be the same kind of motivation to try to impeach the testimony of somebody that there would be if the deposition were admissible as substantive evidence? The attorney may not want to show his cards or her cards during the discovery deposition, Judge. There may be, you know, a number of reasons to wait till trial to not put someone on notice of what the defense is. Even if the witness is unavailable, they're not admissible in the state court? There are certain circumstances involving child hearsay in sexual crimes where the deposition testimony or out-of-court testimony can be admissible. There was no indication that there was that type of hearing that's required in this case. And there can't be confrontation clause problems with that if the witness never testifies. Right. But back to why the evidence was unreliable in this case, if I may, I'd like to point the court to the amount of time that it passed. We're talking about events that were alleged to occur 25 years before Mr. Hall was sentenced in this case. The sentence that he received in the district court, 11 months followed by two years of probation, he pled to offenses that did not require under the statute the touching of the children. It could be solicitation of children to perform sexual acts, exhibition to the children. He did not plead to digitally penetrating or oral sex with the children, which the court found that he committed. The hearsay was really just the statement of one child that was repeated in the police report. So the mother, you know, of course, didn't witness what happened. The child was the witness, but there was really no corroboration between the child's statement and the police report. It was just a regurgitation of what the child's statement was. So you're saying the district court's ruling considering the hearsay, well, considering the 2002 evidence, some of which was hearsay, was erroneous? Yes, Judge, and I'd like to also . . . Use of discretion, I imagine, but what about the district court's statement, quote, to the extent the 11th Circuit disagrees with the amount of legal rules in the case, my sentence would be the same? Well, the court cited the need to protect the public, and that was all based on the hearsay evidence that Mr. Hall had actually abused all of these children. But she said even if I was wrong about that, my rulings, I mean, my sentence would be the same. I think if you look at the totality of the reasons that she imposed, they do rely heavily and explicitly on the fact that Mr. Hall committed more . . . So we determine she's not credible when she stated that? I don't know how you separate the horrible abuse that she found that he committed from the need to protect the public that she . . . And determining what her sentence would be. I would think the way you would do it is by listening to what the judge said. I understand, Your Honor. I don't think that we can unring that bell once the court's made a finding that he committed these offenses. And I would like to point briefly to the opportunity to rebut the evidence. That's one of the things that the court, you know, has looked at that I think is really what was lacking in this case. Before you get there, wasn't there an investigation in 2017 where a client admitted that some of the pictures of one of the victims occurred when his friend Roberts brought the victim to his house, which he would do whenever they were in town, and that, quote, maybe I shouldn't have taken any pictures. In other words, he was taking pictures of his friend engaging in acts of sexuality with underage children. Pretty much, Judge. My client did admit . . . Not a problem for your client? Absolutely. I don't think the pictures were of Mr. Roberts engaging in sexual acts with the child. I think they were sexually explicit pictures of the child. It may be a distinction that doesn't make a difference, but he did admit to taking sexually explicit pictures. All right. If I understand correctly, your client got a 40-year sentence, which is a variance upward from a guideline range of 121 to 151, and well above the minimum mandatory of 180, what was the statutory maximum, 40 years, and you're saying you didn't have an opportunity to rebut the evidence from the state proceeding, which was in 2002, which involved incidents that took place back in the 1990s, and you didn't have an opportunity to rebut that, which was taken into account for the variance. Is that your position on this? Almost, Judge. I'm not sure I would call it a variance. In my brief, I call it a departure because she based it on the inadequacy of the pattern enhancement to the child sexual abuse guideline. But a variance is always based on the inadequacy of something in the guidelines. Otherwise, it would be within the guidelines. No need for a variance. Well, I think that in Capra Delis, this court found something to be a variance, even though the court had called it a departure and said that the inadequacy of a guideline, when it's specifically addressed by the guidelines, it's really a departure. And if we look at Note 9, 2G2.2, it talks about an upward departure can be warranted if the pattern enhancement doesn't adequately reflect the seriousness of the sexual abuse or exploitation involved. So to me, that was the basis. She said, look, there have been other victims of this. It doesn't require that many victims to impose this pattern enhancement, which I think is a five-level enhancement. It's either four or five. And for that reason, she departed, not buried. Thank you, Your Honor. Thank you. All right. Mr. Register. Yes. Please, court. My name is Lynn Register. I'm Assistant U.S. Attorney in Pensacola representing the government this morning. Your Honor, in order to, the court, as Judge Vinson noted, certainly can rely on a hearsay that has a minimum addition of reliability. The court noted it several different times about the reliability of this, that there was an extra measure of reliability because the sworn depositions matched the sworn statements in the police file. These weren't just depositions taken by any lawyer. These were taken by Mr. Hall's lawyer. The last time I checked, Florida is one of seven states that allows pretrial discovery depositions. And this was an opportunity for Mr. Hall's lawyer to question both the victim and her mom in the 2002 case. So, the district court over and over again at this sentencing said, Mr. Terraza, please just, I'm going to give you every opportunity. Please tell me how any of this is unreliable. I want you to have a full opportunity to explain how any of it's unreliable. His only response, and this is on page 24, is, well, the way I show it's unreliable is I deny that I touched the kids, which as Judge Rosenbaum pointed out at sentencing, Mr. Terraza said his client couldn't remember whether he touched them or not. But what was offered to the district court was I denied that I touched them and I was allowed by the state attorney's office to plead to a lesser offense of lewd exhibition and lewd conduct. The reason for the state attorney's office to allow a plea to a lesser offense, certainly in controlling as to whether or not there was any physical contact, it may be on the basis of they don't want to put a victim through public testimony of recounting in a courtroom what happened to them. Now, let me ask you this. My understanding is from the briefs that in the 2002 court file indicated that the defendant had admitted to touching the children, sexually touching the children, to the police. Did he deny in this sentence hearing that he had admitted that? He denied that he had admitted that at this sentence hearing. And then that during control phone calls with Wendy, the mother, and A, the young girl, the case file indicates he had admitted it then. Did he deny that? No, sir. Okay. So undenied from the 2002 case file is that he had admitted that to Wendy when Wendy and A, we're calling her, called him in a control phone call with the police listening. Right. This is on page 24 of the sentencing transcript, the reasons that he denied it. There was no showing of material faults that he had. Now, wait, wait, wait, wait, wait, wait, wait. You say the reason he denied it, and I just heard you say he didn't deny having admitted it to Wendy and A in the control phone call. Did he or did he not? He did not deny that. He denied that there had been any touching in this sentence. He denied there had been any touching, but he didn't deny having admitted that to Wendy and A in the control call. Yes, sir. Okay. But in order to show an absence of a minimum condition of liability, he's got to establish a material falsity. There was nothing suggested that established material falsity of anything in that 2002 court trial. There was no claim that the factual findings made by the district court based on the hearsay were clearly erroneous. That's never voiced one time. Let me ask you one other thing. The charging document in the 2002 case, which I assume we can all consider reliable unless there's some contrary, had alleged that the defendant, quote, touched the victim while she was naked at his request, end of quote. Did he deny that in the present hearing? No, sir. I think Mr. Traws is correct that he denied a penetration, but they didn't go into that kind of detail about whether you successfully penetrated her or just touched her in a lewd and lascivious way. The court did note that had the government chosen to charge production of child pornography, triggering a 35-year mandatory minimum, that in her opinion we could have proved that in this case. I see in case after case where that's true. The government could have charged production, and they proved facts of production, and the judge considers facts of production, often considers it in sentencing. Why doesn't the government charge it when you have the evidence? I'm not privy to that, Your Honor. The proposals run through our indictment review committee, and they try to stay conservative. This was an older case. It was kind of long in the tooth to have to reconstruct what happened here, and so that was a decision that was made. Okay. But the court, as you note in her second reasons and in the transcript, she said that she'd been able to, the district court, but the district court said that it would have imposed a life sentence if it possibly could have. Isn't this a life sentence? I think he's, what, 62 years old and a 40-year sentence. That's equivalent to a life sentence, isn't it? One can only hope, Your Honor. This guy needs to be warehoused just as long as he can possibly be held, and I think that's reflected in the district court's statement of reasons that she has to impose this to protect the fellow. Well, she repeatedly says that everything in the state court was consistent, but she didn't really use sufficient indices of reliability that much. She doesn't say, I find this, make a specific finding of credibility, but when reliability is apparent from the record, the court doesn't have to make a specific finding of credibility. There were certainly minimum indicia of reliability. He had a chance to rebut it, and the reliability is apparent from the record in that the sworn depositions match the sworn statements. You're saying it's implied if she accepts it as true, she's accepting it as having established credibility and reliability. I think you have to look at the record. You don't have to say, I find this to be credible. You don't have to say, I find this to be credible if it's apparent from the record. There was a case that came out since we briefed this named Baptiste that refers to an earlier case, Gordon, and it addresses that specific point. We have a long line of cases saying that we presume that trial judges know and apply the law correctly unless and until they prove to the contrary on that. I understand what you're talking about. Because she made a very clear point that this was not a departure from the guidelines, that she or it, the district court was imposing a sentence that was a significant variance at page 50 in the sentencing transcript. She says the district court refers to it as a significant upward variance. Throughout the statement of reasons, she indicates that this is a variance. It is not a departure. Because it is a substantively reasonable sentence, since it did not exceed the statutory maximum, then because she said she would have imposed the same sentence, I would respectfully suggest it would be a pointless do-over to send this back in the event this court takes some issue with her sentencing guidelines ruling, which I would suggest are flawless. There is no problem with them. I want to talk about the due process aspect of this. The defendant entered a plea to an offense that carried a guideline range of 121 to 151, knowing that it had a minimum mandatory of 180, but he had no idea that he was going to be ultimately sentenced to 40 years, which is a significant difference. And no one put him on notice of that until when the PSI came out? When did that actually possibly come out? It wasn't until the sentencing, was it? It was the indictment charged in offense where the maximum possible sentence under these circumstances was 40 years. I'm not privy to what counsel shared with me. It certainly would have been the PSR. Counsel, you mean to tell us that the rule 11, the rule 11 colloquy may not have told him what the maximum sentence was? Yes, absolutely, the rule 11 colloquy did. Excuse me, I had a lapse. I'm thinking of a trial scenario. But this was a rule 11 colloquy, and it would have been covered very thoroughly what the maximum possible sentence was. If not, the plea would have probably been invalid, wouldn't it? Well, that's speculation, but I would have thought so. Well, you know, we tell defendants all the time, you're facing a sentence of up to life imprisonment, but when they enter a plea to a drug case, for example, but they certainly don't expect they're going to receive life when the guidelines are 48 to 60 months or something. I mean, isn't there a due process element here that you need to have some notice to a defendant that he's going to be entering a plea that is going to be well above the guidelines and a minimum mandatory? I don't think so unless if it's going to be a guideline sentence and it's going to be well above. You have to do it. If you're going to depart, you have to do it. So what's the difference between that? And the reason why you have to do that is because you're going to subject them to a significantly higher sentence. They need to be prepared for it, perhaps even in the decision to plead guilty to the offense. Although in Arizari, the Supreme Court specifically rejected the proposition that you had to give notice for an upward variance. Yes. And the reason you have to give it for a departure is the guidelines say that. Yes. And as I recall, and I'm certain of this, the Department of Justice threw in the towel on that and said, well, if you've got to give it to departure, you ought to have to give it for the variance. And the Supreme Court appointed a lawyer to represent the abandoned position and then ruled in favor of the abandoned position. And the lawyer was Bill Rutledge, who is now the dean of the Georgia Law School. They don't often do that, but they thought strongly enough about it to say, no, we're not going to let the government discard that position. That's an interesting history, and I've learned it for the first time from Your Honor this morning. I wasn't aware of it. You've never had a conversation with Bill Rutledge, or he would have brought it up. I assure you. Since this is recorded, I'll be careful what I say about the Solicitor General's decision to bail out on that. But unless the Court has any other questions, I'll conclude my remarks. We don't. Mr. Tarasa. The Court has talked about the need to not give notice for a variance versus a departure. To me, it's very difficult to tell the difference, especially in a situation like this where there may have been both. So I agree with you from the standpoint of what seems fair and right, and as Judge Vinson was saying, from the due process standpoint. But we do, I mean, we have the Supreme Court opinion here. So, I mean, what difference does it make? I mean, how legally would you address the problem? I mean, it seems like we're bound by the Supreme Court on this. Well, again, I think it was a departure that Rule 32H requires notice of a departure. So the only way you would get it there is that it has to be a departure. But we have case law that says she said it was a variance. She was clear that it was a variance. Judges understand the difference between variances and departures, so it's a variance. Does your argument depend on our finding that it's a departure? Or is there another way that you would argue that the Supreme Court's decision does not bind us to find that notice wasn't necessary? Well, I don't think it has to be one or the other, Judge. I think it can be both. And I'd also point the court to the United States v. Capordellas case cited in my brief, where the court found something to be a variance even though the district court called it a departure. So I don't think the district court's characterization of it is controlling. I think the court has to look at whether or not the court cited a guideline. The court in this case did talk about the pattern enhancement and whether or not what the court's rationale was. Here, the court had a discussion with the probation officer in the courtroom at sentencing about the inadequacy of the pattern enhancement, how many victims would be required for that enhancement. I mean, we also often have cases where, for example, the district judge might find the criminal history calculation either overstates or understates. And that would mean that the criminal history guideline is inadequate, right? I mean, what is the difference? Why is this any different? The pattern of activity is a specific offense characteristic enhancement, Judge. And I would just say that the arguments are connected. This is part of the opportunity to rebut the evidence that is required for the finding of reliability. Thank you. Thank you, Mr. Reza. I don't usually say this to court-appointed counsel, but I would like to express our appreciation for you taking this case. I say that because I know it's probably not your favorite case to have handled, but you did exceptionally well. Good job. Next case up is Robinson v. Rankin.